The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, aloha, and welcome to the Ninth Circuit. I'm joined today by my colleagues Judge Clifton and Judge Bybee. We have previously submitted several cases. The case of Fontes Garcia v. Garland, the case of United States v. Nelson, and the case of United States v. Smith have been submitted. We have three cases on the oral argument calendar. The first is Wahl v. Ryan, and Ms. Broomer is in person. Ms. Damstres by video, can you hear us okay? Why don't you say something so we can make sure we can hear you? You bet, Your Honor. I hear you just fine. I hope the same is true. Excellent. All right. So we'll begin, as I say, with Wahl v. Ryan and Ms. Broomer whenever you are ready. Thank you. May it please the Court, esteemed colleague, I'm here representing Mr. Wahl. To give the Court an update on bail status, the Department of Corrections shows that Mr. Wahl was released to community supervised release as of January 30, 2023, which I understand still leaves him in state custody, although not in the Department of Corrections. In a way, the case is sort of like, hey, the damage is done. He's served about 10 years, and now he's on community release. But this is an important case where there was a jury instruction that was necessary, that should have been given, that very well could have changed the outcome of the case. In the post-conviction relief, as the Court knows, the counsel that he had for post-conviction relief didn't mention the jury instruction error, and then that was mentioned in the federal habeas. But as we argued, we believe that's excused by Martinez v. Ryan. The district court issued, on its own motion, issued a certificate of ability as to count to only. That's the jury instruction issue that I've previously alluded to. It was a failure to provide an important and a necessary jury instruction on self-defense. Mr. Wahl was convicted April 3, 2014, after a jury trial and one count of manslaughter and sentenced to the presumptive term of 10.5 years. At trial, there was a lesser-included offense of negligent homicide, but of course, as we know, the jury did not find the lesser-included offense. This was a 10-day trial, and there's some conflicting facts, but generally the facts appear to be agreed upon that the victim, S.C., and pursued him to the vehicle that Mr. Wahl was retreating from the incident in and may have reached through the window, may have tried to grab the wheel, may have tried to punch him. There are some conflicting testimony. Mr. Wahl. Counsel. Yes. What case tells us that this is ineffective assistance of counsel? Is Fish the best case you've got? Fish is, and although the government says that Fish supports their case, the facts of Fish are actually very supportive of Mr. Wahl. Well, except that in Fish, there was no physical contact between the two men, and you have sort of the intermediaries of the dogs threatening Mr. Fish. That just doesn't feel like this case, and I'm not sure how you could look at Fish and say, well, counsel absolutely had a duty to ask for this instruction, and it's malpractice to fail to ask for the instruction. Yes, Your Honor, and that is the government's argument, but in Fish, as in Mr. Wahl, so in Fish, there's the dogs and the guy comes running and he's waving his arms. That could very well be the case in Mr. Wahl's case. That's why I brought up initially what the conflicting testimony was because that's why this jury instruction was so important because the jury may not have thought that F.C., the victim, ever made physical contact with Mr. Wahl and then might have thought, oh, well, there's nothing here in terms of a self-defense, but when you have... But counsel, the jury was instructed that the defendant can only use deadly physical force to protect against another's use or apparent or threatened use of deadly physical force, and they obviously found that your client's use of deadly physical force was unjustified. It's just hard for me to understand how defining further unlawful physical force would influence that issue of whether your client was justified in using deadly physical force. Exactly for the thing that you were saying, Your Honor, is why the unlawful physical force definition was so important because if they would have thought that F.C. was endangering or threatening or intimidating, they could have agreed on the self-defense. Instead, they're thinking there just needs to be this... But how does that bear on deadly force? I mean, because this is what's at issue here. Uh-oh. Hold on. Do we need to stop here, Kwame, for something? Are we doing okay? We have lost the attorney, I think. This court now resumes its session. Okay. So, Ms. Damster, you are back. I am back, Your Honors. My apologies. We just had a complete technical meltdown at my end. That was office-wide, so... No, it's okay. Thank you. Do you have... I mean, this is an unanswerable question. You obviously don't know exactly what you missed because you weren't here. So, do you remember what our last discussion was? Were you here when Judge Bybee asked his question? No, I was not, Your Honor. We had... The clock was at about eight minutes. Okay, so I think we probably... Rumor was still finishing up her introduction. Yeah, I think we probably missed about three minutes. So, you know, why don't we do this? Why don't we just put ten minutes back on the clock? And, you know, you don't need to do your introduction again, but why don't you get as composed as you need to get and just start wherever you think is appropriate. And if we want to, Judge Bybee or I, during the argument, can re-ask our questions for the benefit of your friend. But take the time you need to be ready and just... Again, we'll give you whatever time you need to get your argument in and whenever you're ready. Okay. All right. Let's do this. Let me try to rewind. So to go back to the beginning, the bail status for Mr. Wall is that he's on community supervised release as of January 30, 2023. As I stated previously, the damage is kind of already done. He's served the ten years, served approximately ten years, and now is finishing up as his community supervised release. This is an ineffective assistance of counsel case. This was ground two where that was the issue that was certified by the district court on its own motion, and that was failure to provide an important and necessary jury instruction on self-defense. There were some jury instructions on self-defense. There was the regular jury instruction, and then there was the one about entering the vehicle, using the force to enter the vehicle. But what wasn't done was the definition of unlawful physical force, which defines, and I think particularly for this case, defines endangerment and threatening or intimidating, along with assault and aggravated assault. Based on the facts of the case, I think it's very likely that there is a dispute in facts on what was happening between S.C., the victim, and Mickey Wall, my client. So sort of going back to the questions that I was asking, would you agree that the jury here had to have found that your client used deadly force? So the question is, do I agree this jury did they find there was deadly force? Yes, the jury in this case found deadly force. If we start with that, the jury was instructed that to use deadly force in self-defense, it can only be used to protect against another's use or apparent or attempted or threatened use of deadly physical force. The jury obviously found in this case that your client was not justified in using deadly force. The jury was also instructed your client had no duty to retreat. So I'm having trouble understanding how your proposed instruction would have moved the needle at all on your client and deadly force. So why don't you try to help me out on that? So it's the same argument for why it would have moved the needle as in the Fish case. I know the government says that's the opposite case, but really when you look at Fish versus the Sturgeson case, this case, Mr. Wall's case, is a lot closer to Fish's case. You can take the victim in Fish who's running and waving his arms and substitute an SC who's running and waving his arms, running towards the vehicle, and yelling, I'm going to kill you, 12-fold, 10 men, whatever the things that he was yelling. So it's very similar to that. In Fish, the Arizona court reversed and gave Mr. Fish a new trial. This is not the same as Sturgeson. In Sturgeson, there was like a struggle for the gun. There was like no dispute. There was no doubt that there was a physical fight between the two people. This is like if you have like a rainbow and Fish is on one side and Sturgeson is on the other, and you take Mr. Wall's case, he's a lot closer to the Fish facts than he is to the Sturgeson case. There was no physical contact whatsoever between the victim and Mr. Fish. And in your case, there was. There not only was physical contact, there had been a history of physical contact. This was a battle that started with their girlfriends that spills out of the bar and into the parking lot. We've got punches and names and things being thrown. And you've got a self-defense here. I'm just not sure I see how Fish is on all fours or even all threes with this case. In Wall, the facts are not that clear cut where there's punches going between both because there's a variety of people who are intoxicated and testifying, and you have some different stories of what is going on. And probably one of the most prevalent stories is that, and that comes from Mr. Wall himself, is that he grabs Jenny and brings her to the car. So it doesn't sound like there's any physical contact between S.C. and Mr. Wall. And then when he gets in the car, what do we know for sure S.C. does? It's all very conflicting. Maybe he reaches in the window. Maybe he's throwing punches. Maybe he lands a punch. He's yelling. But what I think has to be undisputed is that at one point the person's arm is caught in the car, the window is up, and your client drives the car away, and that's what the jury found was deadly force, driving the car away while the guy's arm is stuck in the window. So it's just hard again for me to see how your proposed erroneously not requested instruction goes to what happens then when your client is using the deadly physical force to drive away while the guy's arm is stuck in the window. How does your instruction impact that point in time in the jury's mind? Because if the jury finds that S.C. used unlawful physical force, and those definitions being endangerment and then all the elements of endangerment, threatening or intimidating, all the elements of that, and then assault and aggravated assault, in my mind I don't think assault and aggravated assault are there, but, I mean, that would be more for a jury to decide. But it shows that Mr. Wall is trying to retreat, and he's trying to get away from this endangerment and this threatening or intimidating, and this jury instruction further supplements the other self-defense instructions and would have given the jury more clarity that it didn't need to be the knockdown. What would the jury have concluded factually that would be covered by the proposed additional instruction that wasn't already covered? The jury could have concluded that, because, like, for instance, in the self-defense instruction, which talks about protecting the vehicle, the jury may have felt that the victim wasn't in the vehicle, wasn't trying to get into the vehicle. He was just on the side of it. So the jury looks at it and says, oh, well, no, this is too much force. You're trying to testify that his arm reached inside, and so I'm having trouble figuring out, okay, exactly what facts could the jury have come up with that wouldn't already have been covered? And that's the question. Is there an answer? Yes, I think there is. And the facts are that the jury could have said, I don't think SC is trying to get in there. And so they look at that jury instruction, and they say, no, SC's behavior isn't enough. But with the definition of unlawful physical force, then we may have gotten there. Wow. What additional language in the instruction that's proposed would have made a difference there? Sure. And it's because you have, and I think, like I said, I think it's particularly the definition of endangerment and the elements of endangerment and the definition of threatening or intimidating and the elements of threatening or intimidating that shows that it doesn't need to be SC necessarily making contact with Mr. Wall's face. That if Mr. Wall is protecting from unlawful physical force, which does include endangerment and does include threatening or intimidating, it could be assault too. Again, I don't know that putting your arm in is necessarily an ag assault, but the other ones, definitely having those sort of extra clarifications could have really changed the jury's mind on it. And not in the sense where the magistrate said, it couldn't hurt. And it brought me back to the old joke of the guy's dead on the ground, the doctor says, he's dead. And a woman comes up and says, give him chicken soup. And then the doctor said, but he's dead. And she says, give him chicken soup. But he's dead. And she says, it couldn't hurt. This could hurt. This could hurt. That's not enough for you. No, no, no, no. You have to show the prejudice under Strickland. I understand. And that doesn't remotely come close. And this isn't the, it couldn't hurt, Your Honor. This is, there is prejudice under Strickland because it could have changed the decision of the jury. It's not that it couldn't hurt. It could have changed. Isn't enough under Strickland. That's sort of the could have hurt standard. Yes, yes. It's most likely it would have changed it. I think I'm at the end of my time. Sure. All right. Thank you, judges. Okay. Ms. Damster, whenever you're ready. Thank you, Your Honors. Boy. Here the district court correctly concluded that Wall's IAC claim was not substantial enough to establish clause to excuse his procedural default under Martinez. As Your Honors have both well pointed out, that requires a showing that meets the Strickland standard. And under Strickland, we have neither, we have no deficient performance, nor do we have prejudice. To continue on with the conversation that Judge Bybee was just having with counsel, the defense of vehicle instruction included the definition of entry. All they had to find was the way it was defined was any part of the victim's body entering that vehicle. And the evidence is undisputed from both the defense and the state that his arm went inside that vehicle to punch him. And that would take care of any self-defense, unlawful physical force and self-defense. It's clear that there was physical contact here. So FISH doesn't even come into play. FISH was limited to its own facts. And in that case, the instruction was requested. Here we have no, it wasn't requested. The defense got the self-defense instruction. They got defensive vehicle. And they had several other defenses that they were asserting, including that Shanda ran over the victim. Another witness named Arthur Griffin ran over the victim. The state didn't meet its burden of proof. So this is, in the grand scheme of things, not prejudicial to this defendant. Furthermore, the trial court defined physical force and defined unlawful. And so that really is not going to be anything else happening that's going to require either showing an efficient performance or showing prejudice under Strickland. We just simply don't have enough here to get there. That burden has not been met. Let's see. The, during closing argument, defense counsel argued for self-defense that, you know, somebody's hanging on your window and beating you through it. I submit self-defense is satisfied. So that is the conduct that the defense was focused on in their closing argument. Adding these other definitions would not have added anything to that. In fact, may have been a bit more distracting and unhelpful to the defense. It's really difficult for me to see on further reflection with this case how a self-defense instruction is applicable at all when this defendant was convicted of running over the victim, not pushing him out the window, of running him over. And in a reckless mindset. So it's hard to see for me to see how a self-defense instruction was even applicable. Do your honors have any questions for me? I'm just about been through my bullet points here already. No, my colleagues and I don't have any more questions. So thank you for your argument. Thank you, your honors. I would just ask this court to affirm the district court's judgment. Thank you for your time and for your patience with the technical difficulties, your honors. We'll give you a minute for rebuttal if you'd like to make a rebuttal. Great. Thank you. I don't really have any additional rebuttal. Just to say this case lived and died on the jury instructions and this jury instruction was needed under Strickland. And that would be it. We thank counsel for their arguments and the case just argued will be submitted.
judges: CLIFTON, BYBEE, BENNETT